# Kirkpatrick *versus* Lex & Kirkpatrick.

*Rules of court relative to bills of exception enforced.—Evidence on action for conspiracy.*

1. The rules of the Supreme Court which require the presentation and settlement of bills of exceptions within a specified time, are for the benefit of defendants and will not be disregarded without their consent.

2. In an action on the case in the nature of a writ of conspiracy, where the declaration charges an unlawful confederacy to abstract money and other valuables belonging to the plaintiff, and apply them to the use of the defendant without the knowledge of the plaintiff, it is necessary to prove the combination and appropriation charged and also that it was illegal, and injurious to the plaintiff.

CERTIFICATE from the Court at *Nisi Prius.*

[Kirkpatrick *v.* Lex & Kirkpatrick.]

This was an action on the case in the nature of a writ of conspiracy, by Robert B. Kirkpatrick against Edwin Kirkpatrick and Jacob H. Lex. On the trial the learned judge at Nisi Prius ordered the entry of nonsuit, which was the error assigned here by the plaintiff.

The whole case will be found in the opinion of this court.

*D. P. Brown* and *B. H. Brewster*, for plaintiff.

*Henry M. Phillips*, for Edwin Kirkpatrick.

The opinion of the court was delivered, March 13th 1865, by STRONG, J.—My brethren are all of opinion that there is nothing in this case properly before us for review. There is no certificate, and there is no bill of exceptions sealed. The rules which require the presentation and settlement of bills of exceptions within a specified time are for the benefit of defendants in error, and they cannot be disregarded unless with their consent. Happily in the present case nothing has been lost, for we are all of opinion that upon the evidence given by the plaintiff, as furnished by him to us, he had no case which should have been submitted to the jury.

It was an action on the case in the nature of a writ of conspiracy, in which the declaration averred an unlawful confederacy between Jacob H. Lex and Edwin Kirkpatrick (the latter being the only defendant sued), to abstract money, papers, and bills receivable, belonging to the firm of Lex & Kirkpatrick (of which the plaintiff was a member), and apply them to the use of the conspirators. The overt act alleged, for which alone damages can be recovered in a civil action, was, that, in pursuance of the conspiracy, the defendants withdrew from the banks in which the funds of the firm were deposited, and from the fire-proof of the firm, money, books, vouchers, and bills receivable, belonging to the firm, and appropriated them to their own use.

In support of this declaration the plaintiff gave evidence tending to show the following state of facts. In June or July 1856, the plaintiff and Jacob H. Lex were associated as partners in sugar refining. They were then in straitened circumstances. Their line of credit with S. & W. Welsh, from whom they bought sugar, was full; they had pledged their own paper and their business paper for further credit, and they had not sugar enough on hand to keep their refinery in operation for any length of time. In this condition they applied to Edwin Kirkpatrick the defendant. After some negotiation, in which the defendant acted for them, Mr. David Kirkpatrick, the father of both the plaintiff and Edwin Kirkpatrick, and the father-in-law of Jacob H. Lex, gave his guaranty for the firm to the Messrs. Welsh, to

the extent of $20,000, Edwin Kirkpatrick undertaking to secure to him $5000 of the sum, in case there should be a loss, and Charles Lex $5000 more. The guaranty was a continuing one for, twelve months. It was given with an arrangement that it should be protected under any circumstances, and a bond and mortgage for $25,000 was given to David Kirkpatrick as security. On the faith of this guaranty, additional sugar was obtained from the Messrs. Welsh, and the firm went on, until about the 30th of August next following. Then Mr. Lex came to Edwin Kirkpatrick, the defendant, and told him the firm would have to fail, they could not get along. He was then reminded of his promise to protect the guaranty, and advised to draw the money in bank belonging to the firm, and therewith protect it. To this he assented, and accordingly drew checks upon the banks and with the money and bills receivable of the firm the guaranty was taken up. The firm then failed, and a large debt due to the Messrs. Welsh, beyond what was secured by the guaranty and deposited collaterals, was not paid, but it was afterwards compromised, as were the other debts of the firm, for seventy per cent. of their amount.

To us it is most manifest that these facts do not sustain the declaration, nor do any other facts given in evidence. They do not tend to show any appropriation of the property of the firm to the private use of Jacob H. Lex and Edwin Kirkpatrick, or either of them. They show directly the contrary; an application to the use of the firm of Lex & Kirkpatrick, in the payment of their debt to S. & W. Welsh, and in taking up the guaranty of David Kirkpatrick, primarily his, but secondarily, in part, that of Edwin Kirkpatrick and Charles Lex—a guaranty the firm was bound to protect. This application, Jacob H. Lex, being a member of the firm, had a right to make. It is vain to argue that lifting the guaranty, by paying the debt of the firm for which it was given, is any the less an application to the use of the firm, because the plaintiff was not apprised at the time of the payment of the debt, or because the guaranty had yet time to run. It may be for the interest of a debtor to pay his debt before it falls due. It may be his duty to do so, if possible, when, as in this case, he is under obligation to secure a confidential creditor or a surety against loss. And, if it be true, as all the evidence upon the subject given in this case conduces to prove, that the firm was in straitened circumstances; that "it would have been proper for them to have stopped three months before they did," considering their condition, and that their continuance in business would have been productive of loss, the appropriation of the immediately available funds of the firm to the relief of David Kirkpatrick, their surety, was not only a devotion to the use of the firm, but one which was pre-eminently

[Kirkpatrick *v.* Lex & Kirkpatrick.]

of the first obligation. At all events, it cannot be said to have been an appropriation to the use of the defendants, without which the plaintiff had no case.

And again, if the plaintiff can recover at all, it is because the overt act of which he complains was both illegal and injurious to him. But how can it be pretended that it is illegal for one who occupies the place of a surety of a firm, either directly or indirectly, to persuade a member of the firm to use its property to discharge the debt for which the suretyship exists? And what difference can it make that the surety cannot be called upon immediately to pay? Must he wait, see the means of his principals disappearing before his eyes, and other creditors stepping in before him, without taking a step to protect himself until protection may be impossible? What if he has one security? Does that make it illegal for him to seek another protection which he may suppose better, or a complete discharge which will relieve him from all anxiety and all risk? Doubtless if a person colludes with one member of a firm to injure another partner, that other can maintain an action against the colluding person for any resulting injury. But is persuading him to pay a debt of the partnership, and thus release a surety, what the law recognises an injury? Payment of the debts of the firm was within the scope of Jacob H. Lex's agency as a member of the firm. He was under peculiar obligations to protect David Kirkpatrick's guaranty with the firm's property, and to protect it then, when the firm was in difficulty. The plaintiff was under the same obligation. Was it illegal then in either of them to fulfil this obligation? Or was it contrary to law for Edwin Kirkpatrick, through whose instrumentality they had obtained the guaranty, and who, for their benefit, had made himself liable for a part of it, to suggest to one of them the propriety of discharging this obligation? We cannot regard this as a legal wrong. It exhibits neither an unlawful combination, nor was what was done in following out the suggestion a wrongful act for which the plaintiff can maintain any action.

The nonsuit was therefore necessarily ordered.

Judgment affirmed.